<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AVRAHAM KAMKAR, | : | |
| Plaintiff, | : | Civ. No. 07-4512 (GEB) |
| v. | : | |
| PITNEY BOWES CORP., | : | **MEMORANDUM OPINION** |
| Defendant. | : | |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon Pitney Bowes Corporation's ("Defendant" or "Pitney Bowes") motion for summary judgment.[1] The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Defendant's motion.

**I.     BACKGROUND**

Avraham Kamkar ("Plaintiff" or "Mr. Kamkar") worked as a Pitney Bowes employee in the mailroom of Merrill Lynch's ("Merrill") Princeton, New Jersey office from July 2001 until November 17, 2006. (Declaration of Daniel Aiken ("Aiken Decl."), Ex. C at ¶ 3.) Pitney Bowes and Merrill are parties to a contract (the "Contract") pursuant to which Pitney Bowes provides mailroom services to Merrill's Princeton office. (<u>Id.</u> at ¶ 2.) On November 15, 2006, a Merrill security guard, Mr. Arora, allegedly witnessed Plaintiff stealing bottled water and soda from a

---

[1]     The Defendant claims that the proper party to this action is Pitney Bowes Management Services. For the sake of clarity, the Court will simply refer to the Defendant as Pitney Bowes.

Merrill conference room. (Aiken Decl. Ex. 3, at 2.) The following day, Merrill requested that Pitney Bowes remove Mr. Kamkar from their offices, pursuant to the Contract. Indeed, the Contract provides that Merrill has the right to request the removal of any Pitney Bowes employee that it finds "unacceptable . . . for any reasonable and lawful reason . . ." (Aiken Decl. Ex. 2, Ex. 1 at ¶ 6.10.) On November 20, 2006, the Plaintiff was removed from the Merrill account and placed on "surplus status" with Pitney Bowes. (Aiken Decl. Ex. D, at ¶ 8.) Mr. Kamkar remained on surplus status for more than a month, but was unable to obtain another position within Pitney Bowes. (Aiken Decl. Ex. B, at ¶ 8.) On January 12, 2007, Pitney Bowes terminated the Plaintiff's employment in accordance with the company's surplus status policy. (Id. at ¶ 9.) Mr. Kamkar denies stealing any food or beverages from the Merrill conference room and claims that he was in fact fired from Pitney Bowes because he is Jewish. (Reply at ¶ 1; Kamkar Dep. at 15:18-16:1.) In support of this theory, Mr. Kamkar claims to have overheard Mr. Arora say that: "The Hebrew people were in the concentration camp in the Holocaust and it's too bad that Adolf Hitler did not work overtime to kill more Jews." (Kamkar Dep. at 15:18-16:1, 128:8-11.)

        On September 20, 2007, Plaintiff filed a complaint (the "Complaint") in the New Jersey Superior Court for Mercer County alleging religious discrimination by Pitney Bowes.[2] (Docket

---

[2] The Plaintiff fails to cite the legal basis for his complaint, and only alleges discrimination in very broad, generic, terms. Given the *pro se* status of Mr. Kamkar, however, the Court will construe the Plaintiff's complaint liberally. *See* Haines v. Kerner, 404 U.S. 519, 520 (1972). Since the Defendant suggests that the Plaintiff's cause of action is based on the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12(a), (Def.'s Motion at 1), and since Mr. Kamkar does not reject that characterization, (Kamkar Opp'n Br.), the Court will analyze Mr. Kamkar's allegations under the NJLAD framework.

Entry No. 1.)  The case was removed to federal court under its diversity jurisdiction, 28 U.S.C. § 1332(a)(1).

## II.   STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P.  56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hersh v. Allen Prod. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## III.   DISCUSSION

The purpose of the NJLAD is to ban employment discrimination on the basis of certain enumerated attributes, including religion.  *See* N.J. Stat. Ann. § 10:5-12(a).  In a case alleging religious discrimination, an employee must show that the "prohibited consideration [i.e., the employee's religion] played a role in the decision making process and that it had a determinative influence on the outcome of that process."  Miller v. Cigna Corp., 47 F.3d 586, 597 (3d Cir. 1995).  The New Jersey Supreme Court has adopted the three-step burden-shifting analysis first developed by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792

3

(1973) to analyze NJLAD claims.  Bergen Commercial Bank v. Sisler, 157 N.J. 188, 210 (1999).

Under McDonnell Douglas,

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie of discrimination; (2) the defendant must then show a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.

El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 166 (N.J. Super. Ct. App. Div. 2005).

In the case at bar, the Plaintiff alleges that his Jewish faith was the reason for his dismissal from the Merrill account and was ultimately the cause of his termination by Pitney Bowes.  Applying the three-part test above, however, the Court holds as a matter of law that these events cannot be deemed the result of employment discrimination.  Even viewing the evidence in the light most favorable to the non-movant, the Court concludes that summary judgment should be granted in favor of Defendant.

### A. Prima Facie Case Of Religious Discrimination

To establish a prima facie case of religious discrimination, the plaintiff must show that:

> (1) [he] belongs to a protected class; (2) [he] was performing [his] job at a level that met [his] employer's legitimate expectations; (3) [he] suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions.

Id. at 167, *citing* Maher v. New Jersey Transit R.O. Inc., 125 N.J. 455, 480-81 (1991).[3] At least one United States Supreme Court employment discrimination decision describes the final element of the prima facie test as requiring that the plaintiff produce "evidence adequate to create

---

[3] The New Jersey Supreme Court has interpreted the second element to merely require that "the plaintiff . . . produce evidence showing that [he] was actually performing the job prior to the termination." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 454 (2005).

an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . ." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996), *quoting* Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977).  This approach has recently been adopted by the New Jersey Supreme Court.  *See* Zive, 182 N.J. at 447 (stating that the evidentiary burden is to show that the "plaintiff's factual scenario is compatible with discriminatory intent").  Plaintiff's burden at the prima facie stage is "not an onerous one, and it is generally not difficult to establish a prima facie case of discrimination." Warner v. Federal Express Corp., 174 F. Supp. 2d 215, 219 (D.N.J. 2001), *citing* Swider v. Ha-Lo Indus., 134 F. Supp. 2d 607, 621 (D.N.J. 2001).  Indeed, the plaintiff need only establish a factual scenario showing that "discrimination *could* be a reason for the employer's action." Zive, 182 N.J. at 447, *quoting* Marzano v. Computer Science Corp., 91 F.3d 497, 508 (3d Cir. 1996) (emphasis in original).

Plaintiff's first allegation is that Pitney Bowes dismissed him from the Merrill account on the basis of false accusations grounded in anti-Semitism.  (Compl., April 16, 2007 Letter to Mr. Critelli ("Critelli Letter"), at 2.)  As a member of the Jewish faith, Mr. Kamkar falls within a protected class under the NJLAD –  the first element of the prima facie case is thus satisfied.  (Kamkar Dep. at 37:8-11.)  Mr. Kamkar's allegation also satisfies the second element of the test because he was actually performing the job before termination.  (Aiken Decl. Ex. C, at ¶ 3.)  Mr. Kamkar, however, has failed to provide any evidence suggesting that the transfer from his position in the Merrill mail room to surplus status constituted an "adverse employment action."  Indeed, the evidence submitted to the Court establishes that Mr. Kamkar retained his salary and benefits during his time on surplus status.  (Aiken Decl. Ex. 5.)  Moreover, Mr. Kamkar has not offered any evidence to support an inference of discriminatory action by Pitney Bowes.  While

Plaintiff claims that Merrill requested his removal from the account due to the statements of Mr. Arora – statements which Mr. Kamkar claims were false and motivated by anti-Semitism (Kamkar Dep. at 15:18-16:1, 107:1-9), he fails to offer any evidence that Pitney Bowes was aware of these alleged discriminatory statements when it made the decision to abide by Merrill's request.  Based on the allegations before the Court, Pitney Bowes would have had no reason, at the time of Mr. Kamkar's dismissal, to presume that Merrill's request was motivated by unlawful, discriminatory animus. The Court therefore concludes that the Plaintiff's first allegation does not amount to a prima facie case of discrimination under the McDonnell Douglas test.

The Court now turns to Plaintiff's second allegation: that Pitney Bowes terminated him at the end of his surplus status because of his religion. (Compl. at ¶ 1.)  This allegation also fails to meet the requirements of a prima facie case of discrimination.  Indeed, the evidence before the Court suggests that Mr. Kamkar was not terminated from surplus status for discriminatory reasons, but rather that he was terminated after failing to find another position within Pitney Bowes, in accordance with the company's surplus status policy.[4] (Aiken Decl. Letter to Avraham ("Ex. 5").)  Mr. Kamkar's surplus status was in fact extended beyond the usual length of time to allow him a greater opportunity to find another job. (Aiken Decl. Ex. B, at ¶ 7-8.)[5]

---

[4]   Surplus status normally lasts for two weeks, but it can be extended at the discretion of Pitney Bowes.  During this time frame, the employee is encouraged to interview for all open positions within the company.  If the employee does not have a firm offer of employment by the end of the period, Pitney Bowes will terminate his or her employment. (Aiken Decl. Ex. 5.)

[5]   The Court also notes that it was Angela Sposato ("Sposato"), the Pitney Bowes Director of Human Resources, who made the decision to terminate his surplus status.  Mr. Kamkar, however, does not accuse her of any anti-Semitic conduct.

Accordingly, the Court holds that Plaintiff has failed to present a prima facie case of employment discrimination in connection with either one of his allegations. The Court need not proceed further under the McDonnell Douglas analysis.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Pitney Bowes' motion for summary judgment. An appropriate form of Order accompanies this Opinion.

Dated: July 25, 2008

           /s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

---

(Aiken Decl. Ex. B, at ¶ 1; Kamkar Dep. at 300:1-6.)